IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERGIO ORTEGA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 2527 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Sergio Ortega's ("Plaintiff") claims for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment, [Doc. No. 24] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 31] is granted.

# BACKGROUND

## I. Procedural History

Plaintiff filed his applications for DIB and SSI in June 2013, alleging disability since April 2013 due to blindness in his right eye and left-side loss of bodily function, both due to a stroke. (R. 203–19, 239.) His application was denied initially and again upon reconsideration. (R. 93–128.) Plaintiff presented for a hearing before an ALJ on September 3, 2015, represented by counsel. (R. 36–92.) A vocational expert was present and offered testimony. (*Id.*) On December 9, 2015, the ALJ issued an unfavorable decision finding Plaintiff was not disabled.[1] (R. 19–35.) The Appeals Council denied review on February 2, 2017, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–7.)

## II. ALJ Decision

On December 9, 2015, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 19–35.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2013, his alleged onset date. (R. 24.) At step two, the ALJ found that Plaintiff suffered from severe impairments of diabetes mellitus, hypertension, loss of vision, and status post cerebrovascular accident. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically

---

[1] The Court Transcript Index indicates that the ALJ issued his decision on December 4, 2015. The Court adopts the date on the ALJ's decision itself.

equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 146.926); (R. 21.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a medium exertional level, except he could not work at heights, climb ladders, or frequently negotiate stairs. (R. 25,) The ALJ also stated Plaintiff should avoid operation of moving machinery or dangerous machinery because he had a loss of vision in the left eye and lacked depth perception. (*Id.*) At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. (R. 29.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs in significant numbers in the national economy that Plaintiff could perform, including laundry laborer, dining room attendant, and greeter. (R. 30.) Because of this determination, the ALJ found that Plaintiff was not disabled under the Act. (R. 31.)

## DISCUSSION

### III.   ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ

3

considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v.*

*Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision, but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir.

1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron*, 19 F.3d at 333.

V.    Analysis

Plaintiff argues remand is appropriate because: (1) the Appeals Council erred in finding evidence submitted to it was not "new and material"; (2) the ALJ failed to fully develop the record; and (3) the ALJ improperly assessed Plaintiff's credibility. For the reasons that follow, the Court disagrees.

**A. Appeals Council**

To begin, Plaintiff takes issue with the Appeals Council's determination that two reports submitted by Dr. Nicolettle Putini, Ph.D., dated February and March 2016, did not constitute new and material evidence. (R. 368–98.) In the earlier of the two reports, Dr. Putini diagnosed Plaintiff with mild neurocognitive disorder due to vascular disease and a persistent depressive disorder. (R. 379.) She opined that Plaintiff's cognitive impairment would interfere with his ability to maintain concentration, persistence, or pace on routine work demands in a competitive setting. (R. 380.) In her second report, Dr. Putini opined that Plaintiff meets the requirements of Listing 12.02 (Organic Mental Disorders) and Listing 12.04 (Affective Disorders). (R. 381.) The Appeals Council explained that it looked at Dr. Putini's February and March 2016 statements, but ultimately decided that the new evidence "did not affect the [ALJ's] decision about whether [Plaintiff was] disabled beginning on or before December 9, 2015." (R. 2.)

6

The social security regulations allow a plaintiff seeking review of an ALJ's decision to submit additional evidence to the Appeals Council. 20 C.F.R. § 404.970(b). The Appeals Council "consider[s] the additional evidence" only if the evidence is: (1) "new"; (2) "material"; and (3) "relate[d] to the period on or before the date of the administrative law judge hearing decision." *Id*. If the evidence meets this preliminary test, it is deemed "qualifying" and the Appeals Council will proceed to the next stage of evaluation. *See Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012). If the Appeals Council makes a mistake of law in applying the regulation, a district court can review this mistake, and any review is de novo. *See Perkins v Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997) ("Our review of the question whether the Council made an error of law in applying [20 C.F.R. § 404.970(b)] is de novo.").

Evidence is "new," within the meaning of the regulations, if it was "not in existence or available to the claimant at the time of the administrative proceeding" and "material" "if it creates a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp v. Colvin*, 795 F.3d 711, 725 (7th Cir. 2015) (quotations omitted). Moreover, "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. § 416.1470(b).

Here, the Appeals Council determined that Dr. Putini's evaluations did not relate back to the period on or before the date of the ALJ's decision, prohibiting it from proceeding to the next step of the analysis. Plaintiff disagrees with the

7

Appeals Council's conclusion, pointing out that Dr. Putini diagnosed Plaintiff with neurocognitive disorder caused by vascular disease. Plaintiff notes that he did not experience any additional trauma between the ALJ's decision and Dr. Putini's examination two months later, thus it would be "unreasonable" to argue that his neurocognitive disease developed during period between the ALJ's decision and Dr. Putini's evaluation. *Pl.'s Br.* at 8–9. But, in her statements, Dr. Putini did not opine that her findings applied during the period on or before the ALJ's disability determination. Nor did she indicate that her finding's related back to the relevant period in this case. Plaintiff cannot "play doctor" and assume that the limitations set forth by Dr. Putini after the date of the ALJ's decision are applicable in this case simply because he believes it would be "unreasonable" to conclude otherwise. *See Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) (stating a claimant's counsel must not play doctor). Nor can this Court "play doctor" and determine that Dr. Putini's evaluation reflects Plaintiff's condition on or before December 9, 2015 without explicit indication from a medical source. Accordingly, the Court finds that the Appeals Council did not err when it determined that Dr. Putini's evaluations did not constitute new and material evidence.

**B. Developing the Record**

Next, Plaintiff argues that the ALJ failed to fulfill his duty to fully develop the record with respect to his cognitive impairments. *Pl.'s Br.* at 10. At Plaintiff's administrative hearing, Plaintiff's counsel requested that the ALJ send Plaintiff for a psychological evaluation. (R. 38.) In his disability decision, the ALJ found there

8

was no basis for ordering a psychological examination, because the record did not contain any complaints of mental health problems, referrals to mental health providers, or psychiatric treatment. (R. 27–28.) Plaintiff claims this was in error.

ALJs have a duty to fully and fairly develop the record; however, the "obligation is not limitless." *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (quotation omitted). In particular, an ALJ has a "duty to solicit additional information to flesh out an opinion" where "the medical support is not readily discernable." *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). The Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather . . ." *Nelms v. Astrue*, 553 F.3d. 1093, 1098 (7th Cir. 2009). An ALJ is not required to order a consultative examination when there is no objective evidence in the record to support such an examination. *Carroll v. Barnhart*, 291 F.Supp.2d 783, 795 (N.D.Ill.2003) (citing *Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991)).

Here, Plaintiff has not pointed to evidence which indicates that a psychological examination is necessary. Generally, Plaintiff explains that he saw Dr. Hector Flores, M.D. for his "cognitive disorder" and that he reported that his "injuries, illnesses, or conditions" affected his memory and concentration. (R. 242, 253.) Plaintiff contends this is consistent with evidence in his record which demonstrates his "speech is broken" at time and that he struggles with the serial sevens test.

As the Commissioner points out, Plaintiff filed his application for disability due to physical impairments (blindness and loss of bodily function following a stroke), not mental impairments. Moreover, treatment notes from Blue Island Medical Group, where Dr. Flores practiced, do not reflect cognitive difficulties. The doctors at Blue Island Medical Group diagnosed Plaintiff with type II diabetes and "Iatrogenic cerebrovascular infarction or hemorrhage" (R. 304–06.) This is at odds with Plaintiff's assertion that he visited these doctors for "cognitive impairments."

Moreover, Plaintiff has proffered no evidence that his "broken speech" and "cognitive impairments" would impact his ability to function. *See* 20 C.F.R. § 404.1519a(b) (stating a consultative examination may be required if there is an indication of a change in the claimant's condition that is likely to affect his or her ability to work when the current severity of the impairment has not yet been established.) In fact, nowhere in the record does Plaintiff allege that his mental deficiencies prevented him from working. At one point, Plaintiff noted that his conditions affected his memory and concentration (R. 253) (dated July 2013). Yet, nine months later, Plaintiff completed another report where he did not indicate any problems concentrating. (R. 272) (dated April 2014). This minimal evidence of mental impairments hardly justifies a consultative examination. Accordingly, the Court finds no error on this point.

**C. Credibility**

Plaintiff argues that the ALJ improperly assessed his subjective complaints of pain[2]. An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder*, 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical evidence de novo but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

---

[2] In 2016, the Commissioner rescinded SSR 96-7p, 1996 SSR LEXIS 4 and issued SSR 16-3p, 2016 SSR LEXIS 4, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p. 2016 SSR LEXIS 4 only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p, 1996 SSR LEXIS 4 governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on December 9, 2015. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p, 1996 SSR LEXIS 4. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

11

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck*, 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

The ALJ provided several reasons for discounting Plaintiff's subjective symptom allegations including: (1) a lack of conservative treatment; (2) his ability to perform activities of daily living; (3) a lack of objective medical evidence; and (4) his limited complaints of pain. Plaintiff takes issue with each of the reasons provided by the ALJ. The Court addresses them in turn.

### i. Activities of Daily Living

Plaintiff claims that the ALJ's consideration of his activities of daily living failed to account for the episodic nature of his impairments. For example, Plaintiff explains his ability to perform occasional chores is not inconsistent with his left-sided weakness which occurs three times per week, lasting between a few minutes and a few hours.

Contrary to Plaintiff's argument, the ALJ did not state that Plaintiff performed his activities of daily living on a sustained basis. In fact, the ALJ noted that Plaintiff testified that he *sometimes* cooked and did household chores. (R. 28.)

12

Moreover, the ALJ did not impermissibly equate Plaintiff's ability to cook and do laundry to an ability to sustain full-time work, *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Here, the ALJ merely considered Plaintiff's activities of daily living as part of his credibility analysis, as the regulations require. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Schmidt*, 496 F.3d at 844. Thus, the Court finds no error in this respect.

In a related argument, Plaintiff argues that the ALJ placed too much emphasis on his travels to California and Mexico when discounting his credibility. The ALJ stated that Plaintiff's travel "strongly suggested [Plaintiff] was fairly busy with multiple trips during the span of eight months and engag[ed] in considerable activities." (R. 28.) Plaintiff claims the record is unclear if he had taken one trip, two trips, or multiple trips and that there is no evidence of the activities that he engaged in while on his trip(s). Plaintiff is correct; the record is unclear as to the specifics of Plaintiff's travel. (R. 365) (stating Plaintiff had "been travelling to Mexico and to California so he has not had any medical attention for about eight months.") Thus, to the extent the ALJ's decision relies on these facts, it is improper. Nevertheless, it was permissible for the ALJ to generally consider how Plaintiff's ability to travel would undermine his credibility. *See Schaefer v. Barnhart*, 04 C 3876, 2005 WL 418027, at *6 (N.D. Ill. Feb. 18, 2005) (upholding an ALJ's credibility determination which relied in part on the claimant's travel). Thus, to the extent that the ALJ considered Plaintiff's ability to go to Mexico and California as

13

part of his overall credibility determination, no error occurred. *Id*. Accordingly, the Court will not remand on this point.

### ii. Conservative Treatment

Next, the ALJ relied on Plaintiff's conservative treatment to undermine his credibility. Plaintiff claims this was in error because the ALJ failed to inquire into Plaintiff's reasoning for such failure. *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ "must not draw any inferences" about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (citation omitted). While the ALJ may have overlooked this duty, Plaintiff has also failed to establish that proper inquiry into this factor would have led to a different outcome. *Id.* (finding that the ALJ erred when assessing the plaintiff's lack of treatment because the record revealed the plaintiff was unable to cover the costs associated with treatment.) Here, Plaintiff has provided no alternative explanation for his conservative treatment, like an inability to afford treatment, ineffectiveness of treatment, or intolerable side effects from his medication. In fact, the ALJ noted that there were no complaints of side effects documented in the record. (R. 28.) Similarly, the ALJ noted that Plaintiff reported he did not have medical attention for approximately eight months "due to travel to Mexico and California." (*Id.*) (citing R. 356.) Accordingly, Plaintiff's argument does not weigh in favor of remanding the ALJ's disability determination.

### iii. Lack of Objective Evidence

Third, Plaintiff alleges that the ALJ's analysis of his objective medical evidence once again fails to consider the episodic nature of his condition. To the extent Plaintiff argues that the ALJ's credibility determination rests solely on a lack of objective evidence, he is mistaken. As previously demonstrated, the ALJ also properly considered Plaintiff's conservative treatment and activities of daily living when assessing his credibility.

To the extent Plaintiff argues that the ALJ ignored evidence supporting disability, he is likewise mistaken. For example, Plaintiff claims that the ALJ ignored evidence of his cognitive impairments, but as the Court has determined, the record provided very little evidence supporting such impairments. To the extent the record contains evidence of cognitive impairments, the ALJ acknowledged them. For example, the ALJ pointed out that Plaintiff's speech was "broken" on examination (R. 26.) The Court will not overturn the ALJ's decision simply because Plaintiff would have preferred that the ALJ assigned more weight to this evidence. *Skinner*, 478 F.3d at 841 ("This Court may not substitute its judgment for that of the Commissioner by . . . reweighing evidence . . . or deciding questions of credibility.")

### iv. Pain

Finally, Plaintiff complains that the ALJ impermissibly based a portion of his credibility determination on a lack of plain complaints. Plaintiff points out he is not alleging his impairments cause constant difficulties with motor function, but rather that he has "good days and bad days." Without the support of legal authority, he

15

contends that it was "illogical" for the ALJ to make an adverse credibility determination based on his intermittent complains of difficulty with motor functioning. Despite noting that Plaintiff alleges intermittent difficulty with motor function in his left extremities, the ALJ discounts his statements because he has not alleged "frequent or constant" difficulty. (R. 28.) Indeed, this reflects a misunderstanding of Plaintiff's allegations. Despite this error the Court will not remand that ALJ's decision. Although the ALJ's credibility finding was not perfect, it was also not "patently wrong." The ALJ did not place undue weight on any particular factor and he specified several other valid reasons for finding Plaintiff not credible, including Plaintiff's conservative treatment, activities of daily living, and a lack of objective medical evidence. Accordingly, the Court will not disturb the ALJ's credibility determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 24] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 31] is granted. Affirmed.

**SO ORDERED.**  **ENTERED:**

**DATE:   August 30, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**